2019 IL App (1st) 172109-U

No. 1-17-2109

Order filed November 8, 2019

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 15 CR 18839 |
| | ) | |
| TIARA COLLINS, | ) | Honorable |
| | ) | James B. Linn, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE HOFFMAN delivered the judgment of the court.
Justices Rochford and Delort concurred in the judgment.

**ORDER**

¶ 1    *Held*: Pursuant to the one-act, one-crime rule, defendant's sentence for aggravated unlawful restraint is vacated because it was based on the same physical act as her conviction for armed robbery and previously merged in the trial court. The mittimus is corrected.

¶ 2    Following a bench trial, defendant Tiara Collins was convicted of two counts of armed robbery, aggravated battery, aggravated unlawful restraint, and identity theft. She was sentenced to nine and a half years for each armed robbery and five years for each remaining count, to be

served concurrently. On appeal, defendant contends her conviction for aggravated unlawful restraint should be vacated because it stems from the same physical act as her armed robbery convictions and therefore violates the one-act, one-crime doctrine. For the following reasons, we vacate defendant's sentence for unlawful restraint and correct the mittimus.

¶ 3    Defendant and two codefendants, Makiah Burns and William Sims, were charged with two counts of armed robbery (720 ILCS 5/18-2(a)(1) (West 2014)) (counts I and II), four counts of aggravated battery (720 ILCS 5/12-3.05(a)(1), (f)(1) (West 2014)) (counts III, IV, V, and VI), two counts of aggravated unlawful restraint (720 ILCS 5/10-3.1 (West 2014)) (counts VII and VIII), and identity theft (720 ILCS 5/16-30(a)(1) (West 2014)) (count IX).[1] The charges arose from an incident where defendant and codefendants detained the victim Mark Gill, took his bag, laptop computer, mobile phone, and wallet and then shot him in the eye with a pellet gun. Because defendant does not dispute the sufficiency of the evidence, we recite only those facts necessary to our disposition.

¶ 4    The evidence at trial established that about 10 p.m. on October 5, 2015, Gill was walking near a Walgreens located on the corner of Damen and Milwaukee Avenues. Gill walked behind the Walgreens to an alley where his car was parked. He was holding a laptop bag and his phone. His wallet was in his front jacket pocket. As Gill walked, a woman, whom he identified as defendant, approached him from behind and attempted to take his laptop bag, phone, and wallet. Gill struggled with defendant, who was yelling at him to drop his belongings. Although he initially believed defendant was alone, when he turned there was a man, later identified as

---

[1] Codefendant Makiah Burns was tried in a separate but simultaneous bench trial with defendant. Burns was convicted of all counts and has an appeal pending in case number 1-18-1226. Neither codefendant is a party to the instant appeal.

codefendant Sims, standing next to him, pointing what Gill believed to be a gun at him. The gun was actually a pellet gun. Without hesitating, Sims immediately fired the pellet gun. Gill attempted to duck, but he was shot in his left eye. Defendant and Sims then took Gill's belongings and ran towards Walgreens, where they entered a car and drove away. Gill went to a nearby bar and called the police. He later learned that various unauthorized charges were made on his credit and debit cards following the attack. Gill's left eye required three surgeries and he was left legally blind. The pellet gun bullet shattered in Gill's eye and fragments were still present in his cheekbone.

¶ 5    On October 9, 2015, Gill identified Sims as the shooter in a photographic array. On the same date, he identified someone other than defendant as the woman who attacked him and stole his belongings. However, later on October 15, 2015, Gill identified defendant from a different photographic array.

¶ 6    Chicago police detective Robert Murphy retrieved video footage of the vehicle that defendant and Sims fled in from Walgreens. The vehicle was traced to codefendant Burns, who admitted to driving the vehicle. Defendant admitted to Murphy that she took Gill's wallet, but denied taking his laptop bag. Defendant further admitted that after the robbery, she got into a car driven by a woman, whom she did not wish to name. Defendant asked Murphy whether Gill knew he was shot by a man, and not a woman.

¶ 7    Murphy further reviewed video surveillance from a Walmart and a second Walgreens based on information Gill gave him regarding the unauthorized charges to Gill's credit cards. The video surveillance from both Walmart and Walgreens depicted defendant and Sims. Murphy

recovered receipts from Walmart showing Gill's credit cards were used to purchase three televisions.

¶ 8 The court found defendant guilty of all counts. The court merged the aggravated battery counts into count III. With respect to the aggravated unlawful restraint counts, the court stated, "They will merge into counts I, II, and III." At the hearing on posttrial motions, the court again reiterated that the counts of aggravated unlawful restraint "merged into counts I, II, and III."

¶ 9 The court sentenced defendant to "114 months in the penitentiary for Counts I and II of armed robbery, five years in the penitentiary for all counts of aggravated battery, they merge, the armed robbery counts merges, five years for aggravated unlawful restraint, five years for identity theft, everything runs concurrent." Defendant's mittimus reflects two convictions for armed robbery and one conviction each for aggravated battery, aggravated unlawful restraint, and identity theft.

¶ 10 On appeal, defendant argues her conviction for aggravated unlawful restraint violates the one-act, one-crime rule because it stems from the same physical act as her armed robbery convictions. The State agrees, but notes that the trial court merged the conviction into armed robbery, and therefore, this court need only correct her mittimus. The State further argues that defendant's mittimus should reflect only one count of armed robbery because the trial court merged the two armed robbery counts.

¶ 11 Defendant acknowledges that she failed to raise this issue in the circuit court but correctly argues that one-act, one-crime violations are reviewable under the second prong of the plain error doctrine because they implicate the integrity of the judicial process. *People v. Coats*, 2018 IL 121926, ¶ 10; *People v. Nunez*, 236 Ill. 2d 488, 493 (2010).

¶ 12    Under the one-act, one-crime rule, a defendant cannot be convicted of multiple offenses arising out of the same physical act. *People v. Almond*, 2015 IL 113817, ¶ 47 (citing *People v. King*, 66 Ill. 2d 551, 566 (1977)). This court performs a two-step analysis to determine whether simultaneous convictions violate the one-act, one-crime rule. *People v. Miller*, 238 Ill. 2d 161, 165 (2010). We first determine whether the offenses stem from multiple acts or a single act. *Id.* Convictions based on the same physical act are improper. *Id.*  An "act" is defined as any overt or outward manifestation that will support a different offense. *King*, 66 Ill. 2d at 566. If we determine that the offenses stem from separate acts, we then proceed to the second step of the analysis and determine whether any of the offenses are lesser-included offenses. *Miller*, 238 Ill. 2d at 165. If simultaneous convictions violate the one-act, one-crime rule, the defendant "should be sentenced on the most serious offense and the less serious offense should be vacated." *In re Samantha V.,* 234 Ill. 2d 359, 379 (2009). Whether a conviction should be vacated under the one-act, one-crime principle is a question of law, which we review *de novo*. *People v. Johnson*, 237 Ill. 2d 81, 97 (2010).

¶ 13    In this case, the record shows the trial court merged the aggravated unlawful restraint counts into "counts I, II, and III" both at trial and at the hearing on defendant's posttrial motion. However, the court went on to sentence defendant to five years' imprisonment for aggravated unlawful restraint. Because the court had previously merged the counts, sentence should not have been imposed on the aggravated unlawful restraint count. Regardless, the record supports the parties' contentions that defendant's convictions arise out of the single physical act of using force to restrain Gill in order to carry out the armed robbery. Gill testified that, as he struggled with defendant, codefendant Sims pointed a pellet gun at him and shot him. Defendant and Sims

then took Gill's belongings and fled. See, *e.g., People v. McWilliams,* 2015 IL App (1st) 130913, ¶¶ 19-22 (simultaneous convictions of armed robbery and unlawful restraint violated one-act, one-crime rule where defendants ordered victims to ground, pointed BB guns at them, and took items from them); *People v. Daniel,* 2014 IL App (1st) 121171, ¶ 55 (simultaneous convictions of armed robbery and unlawful restraint violated one-act, one-crime rule where "defendant restrained [the victim] from the beginning until the end of the armed robbery—that is, from the moment he displayed a gun and demanded money, until the moment he took [the victim's] wallet and placed a gun in his mouth"). Defendant's simultaneous convictions for armed robbery and aggravated unlawful restraint, therefore, violate the one-act, one-crime rule. Accordingly, we vacate defendant's sentence for aggravated unlawful restraint and order her mittimus corrected.

¶ 14    Finally, we agree with the State that the record reflects the trial court merged defendant's convictions for armed robbery, although her mittimus erroneously lists two separate convictions.

¶ 15    In sum, we vacate defendant's sentence for unlawful restraint. We order the mittimus corrected to reflect the vacatur and a single armed robbery conviction. Remand is unnecessary, as we may directly order the clerk of the court to correct the mittimus pursuant to our authority under Illinois Supreme Court Rule 615(b)(1) (eff. Jan. 1, 1967).The judgment of the circuit court is otherwise affirmed.

¶ 16    Affirmed in part; vacated in part; and mittimus corrected.