2021 IL App (1st) 200073-U

No. 1-20-0073

Order filed June 29, 2021

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 18 CR 13235 |
| | ) | |
| ANGELLE MASSION, | ) | Honorable |
| | ) | Shelley Sutker-Dermer, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court. Justices Lavin and Cobbs concurred in the judgment.

**ORDER**

¶ 1     *Held*: Defendant's conviction for resisting arrest is vacated under the one-act, one-crime rule where, based on the same conduct, she was also convicted of aggravated battery of a peace officer.

¶ 2     Following a bench trial, defendant Angelle Massion was found guilty of aggravated battery of a peace officer (720 ILCS 5/12-3.05 (West 2016)) and resisting arrest (720 ILCS 5/31-1(a-7)

(West 2016)) and sentenced to concurrent 3½ and 3-year prison terms, respectively. She appeals, claiming her conviction for resisting arrest must be vacated under the one-act, one-crime rule. For the following reasons, we vacate defendant's conviction for resisting arrest and otherwise affirm.

¶ 3    Following an incident on September 6, 2016, defendant was charged by information with aggravated battery of a peace officer, which alleged that defendant caused bodily harm to Chicago police officer Angela Carter by "kick[ing], scratch[ing,] and pierc[ing] the skin" while knowing Carter was a performing her official duties (count I), in retaliation for Carter performing her official duties (count II), and to prevent her from performing her official duties (count III). Count IV for felony resisting arrest alleged that defendant proximately caused an "injury" to Carter while resisting arrest.

¶ 4    At trial, Alicja Kaminska testified that around 2 p.m. on September 6, 2016, she was working at the Inn at Lincoln Park on the 600 block of West Diversey Parkway in Chicago when she saw defendant seated in front of a door to the building. Kaminska asked defendant to move, but she refused, cursed at and threatened Kaminska, and demanded the key to the door. After Kaminska stated she would call the police, defendant stepped on her foot, which was in an orthopedic boot. Kaminska walked away and called 911, and defendant fled. Shortly thereafter, three police officers arrived and Kaminska told them what happened. Two officers followed in the direction defendant fled, while one stayed with Kaminska.

¶ 5    Officer Carter testified that she responded to the incident with Officer Carl Luthy and another officer, and spoke with Kaminska. Carter and Luthy then located defendant near the 2700 block of North Pine Grove Avenue. Carter was in uniform, with her police star and tactical vest visible. She approached defendant, who was in the middle of the street, and "tried to guide her to

the sidewalk." Defendant moved her arms, yelled at Carter, and used racial slurs. Carter explained to defendant why the police wanted to speak with her. Defendant responded that "it was not a crime to step on someone's foot," continued to use racial slurs, and pointed her finger in Carter's face. Carter grabbed defendant's hand to handcuff her, at which time she "dropped all of her body weight down on the ground," kicked Carter in the right knee, and lay on the ground. Carter cuffed one of defendant's hands while she continued kicking towards Carter. Defendant then grabbed Carter's right wrist and "dug her nails in," breaking the skin. Other officers arrived, subdued defendant, and arrested her. Afterwards, Carter had pain in her knee and received treatment at the hospital. She had "[b]ruising and swelling," and took time off work.

¶ 6     The State published Carter's and Luthy's body camera footage, which is included in the record on appeal. Carter's footage depicts the officers speaking with Kaminska, who explains what happened and the direction defendant fled. Carter and Luthy drive in that direction and locate defendant moments later. Carter exits the vehicle, approaches defendant, and asks her to stop. Defendant uses racial slurs against Carter. Moments later, defendant hears over the police radio about Kaminska's complaint, and responds "tough s***, not a crime."

¶ 7     Defendant then points her finger near Carter's face and says, "you weren't there." Carter asks defendant to stop, and when she does not, Carter moves defendant's hand behind her back. Defendant falls to the ground and moves her right leg towards Carter, while Carter says "don't kick me." Defendant also grabs Carter's right wrist with her left hand. Carter says "she's digging her nails in." Defendant repeatedly refuses to sit up until other officers arrive. Carter advises the officers that defendant dug her nails into Carter's hand, and defendant responds, "you deserved it,

n\*\*\*." Carter also tells the officers that defendant "kicked me in my knee." Luthy's body camera video is consistent with Carter's.

¶ 8    On cross-examination, Carter testified that the video showed defendant's movement to kick her, but not the contact. Carter could not recall if she told defendant she was under arrest during the interaction.

¶ 9    During closing arguments, the prosecutor stated that to establish aggravated battery of a peace officer, the State had to establish "defendant kicked, scratched, and pierced the skin" of Carter, and argued the State made this showing. Regarding resisting arrest, the prosecutor only argued that the State "clearly met its burden," including showing that Carter "received any injuries."

¶ 10    Following closing arguments, the court found defendant guilty on each count. In so finding, the court stated that defendant "clearly" resisted arrest, which was the "proximate cause" of an injury to Carter. The court also referenced that Carter testified about two injuries, one to her wrist and one to her right knee, which constituted bodily harm.

¶ 11    The court denied defendant's motion for a new trial, merged the aggravated battery counts into count I, and sentenced her to concurrent terms of 3½ years' imprisonment for aggravated battery of a peace officer and 3 years' imprisonment for resisting arrest. The court denied defendant's motion to reconsider sentence.

¶ 12    On appeal, defendant claims that her conviction for resisting arrest violates the one-act, one-crime rule because it arose from the same act as her conviction for aggravated battery of a peace officer. The State argues that defendant's convictions were based on distinct acts.

¶ 13    Defendant acknowledges that she did not preserve this error through a timely objection and inclusion in a posttrial motion, but argues we may reach it on plain error review. See *People v. Staake*, 2017 IL 121755, ¶ 30. When a party fails to properly preserve an error for review, this court may reach the error on plain error review where a clear or obvious error occurred, and either "the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error," or the error was "so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." (Internal quotation omitted.) *People v. Coats*, 2018 IL 121926, ¶ 9. Defendant notes that second prong plain error review applies for alleged one-act, one-crime rule violations. *Id.* ¶ 10. We must first determine whether a clear or obvious error occurred. *Id.* ¶ 11.

¶ 14    In *People v. King*, 66 Ill. 2d 551 (1977), our supreme court stated that multiple convictions cannot be sustained where "more than one offense is carved from the same physical act." *King*, 66 Ill. 2d at 566. To determine whether multiple convictions violate this rule, we must engage in a two-part test. *People v. Miller*, 238 Ill. 2d 161, 165 (2010). First, we must determine "whether the defendant's conduct involved multiple acts or a single act." *Id.* Next, if the conduct involved multiple acts, we determine whether any of the offenses are lesser-included offenses of each other. *Id.* An "act" is "any overt or outward manifestation which would support a different offense." *King*, 66 Ill. 2d at 566. If multiple convictions have been entered based on the same act, only the conviction for the most serious charge may stand, and the other convictions should be vacated by the reviewing court. *People v. Artis*, 232 Ill. 2d 156, 170 (2009). Whether conduct constitutes the

same act or multiple acts for purposes of this rule is an of issue of law we review *de novo*. *Coats*, 2018 IL 121926, ¶ 12.

¶ 15    To prove aggravated battery of a peace officer, the State had to show, in relevant part, that defendant caused bodily harm to Carter. 720 ILCS 5/12-3.05 (West 2016). In the charging instrument, the State alleged that defendant caused bodily harm by "kick[ing], scratch[ing], and pierc[ing] the skin." To prove felony resisting arrest, the State had to show, in relevant part, that defendant's resistance "was the proximate cause of an injury" to Carter. 720 ILCS 5/31-1(a-7) (West 2016).

¶ 16    At trial, Carter testified to two injuries: one to her right knee, resulting from defendant's kick, and one to her wrist, resulting from defendant's scratch that broke Carter's skin. Both happened during Carter's interaction with defendant, which, based on the body camera footage, lasted only minutes and was continuous. The trial court referenced that Carter suffered "bodily harm" to her wrist and knee, and did not differentiate between the kick and the scratch in finding defendant guilty of the charges.

¶ 17    On this record, we find that defendant's conviction for resisting arrest violates the one-act, one-crime rule, and must be vacated. The act which constituted the aggravated battery of a peace officer was defendant kicking and scratching Carter. The bodily harm that Carter suffered was pain, bruising, and swelling to her knee, and the pierced skin from the scratch. These were the only injuries which the evidence supported. It follows that the only conduct supporting defendant's conviction for felony resisting arrest was the same conduct underlying her aggravated battery of a peace officer conviction.

¶ 18 The State argues that there were multiple distinct acts here, including defendant (1) dropping to the ground, (2) kicking Carter, (3) lying on the ground, (4) grabbing Carter's wrist, and (5) digging her nails into Carter's skin. This argument contradicts the law as explained by our supreme court in *People v. Crespo*, 203 Ill. 2d 335 (2001). There, the court emphasized that where the State charges multiple physical actions as a collective act, and argues accordingly at trial, it cannot later argue that the record supports multiple convictions based on that collective act. *Crespo*, 203 Ill. 2d at 343-45.

¶ 19 Here, the State charged defendant with aggravated battery based on defendant "kick[ing], scratch[ing], and pierc[ing] the skin," and the resisting arrest charge based on generally causing an "injury." The charging instrument did not differentiate between the acts of kicking and scratching. Then, at trial, neither the State's argument nor the trial court's findings differentiated between the kick and the scratch. Instead, the prosecutor explicitly argued the State had to establish defendant "kicked, scratched, and pierced the skin" to satisfy aggravated battery of a peace officer as charged. Likewise, the court referenced the injuries to Carter's knee and wrist as collectively satisfying the element of bodily harm, then simply said that resisting arrest had been established, without identifying any additional bases for this finding. Thus, as the supreme court explained in *Crespo*, the State treated defendant's conduct of kicking and scratching as part of the same "act" that caused bodily harm and injury to Carter. *Id.*; compare *People v. Keefer*, 229 Ill. App. 3d 582, 584 (1992) (same "act" formed basis of aggravated battery of peace officer and resisting arrest convictions where the defendant, as part of the same "struggle" with an officer, both grabbed the officer's fingers and slammed the officer into a wall) with *People v. Pearson*, 331 Ill. App. 3d 312,

322 (2002) (distinguishing *Keefer* and finding that the defendant taking the victim's purse and pushing her to the ground constituted multiple acts).

¶ 20    The parties discuss *People v. Hagler*, 402 Ill. App. 3d 149 (2010), at length, each arguing that the case supports its position. In *Hagler*, the defendant was convicted of aggravated battery of a peace officer and resisting arrest based on the single act of slamming a door on a police officer. *Hagler*, 402 Ill. App. 3d at 155. There, as here, because the defendant was charged with felony resisting arrest, and the only act causing harm to the officer was the defendant slamming the door, a one-act, one-crime rule violation occurred. *Id.* Defendant argues the same principle applies here, while the State contends that defendant engaged in the multiple acts of kicking and scratching, as opposed to the single act of slamming the door at issue in *Hagler*.

¶ 21    While defendant here engaged in more than one physical action, whether those actions constitute a single "act" for purposes of the one-act, one-crime rule is controlled by *Crespo*. Under this understanding, the State's argument fails for the same reason it did in *Hagler*. Because the resisting arrest charge required a showing of proximate cause of injury, the only act that satisfied that element is the same act charged in the information and argued by the State at trial as also establishing the bodily harm element of aggravated of a peace officer—specifically, kicking, scratching, and piercing the skin. Consequently, the convictions arise from the same "act" for one-act, one-crime rule purposes. *Id.*

¶ 22    Finally, the State argues that defendant's other acts besides kicking, scratching, and piercing Carter's skin can be understood as a proximate cause of Carter's injuries. This argument fails because "proximate cause" in this context also requires a showing of cause in fact, and no

acts besides the kicking and scratching were causes in fact of Carter's injuries. See *People v. Hudson*, 222 Ill. 2d 392, 401 (2006).

¶ 23 Based on the above, we find the trial court committed second-prong plain error by convicting defendant of resisting arrest in violation of the one-act, one-crime rule. Accordingly, we vacate that conviction, as it carries a lesser penalty than aggravated battery of a peace officer. Compare 720 ILCS 5/12-3.05(d)(4), (h) (West 2016) with 720 ILCS 5/31-1(a-7) (West 2016). The judgment of the circuit court is otherwise affirmed.

¶ 24 Vacated in part and affirmed in part.